**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:24-mj-623 |
| | ) | |
| JOSHUA LEE ATWOOD | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF JOSHUA ATWOOD'S**
**PRE-TRIAL RELEASE**

Joshua Atwood, through counsel, respectfully opposes the government's motion for detention in this case and seeks his release on any conditions the Court deems appropriate pursuant to the Bail Reform Act, 18 U.S.C. § 3142. The U.S. Department of Probation has recommended release with certain conditions, and this Court should adopt those recommendations as the least restrictive means to ensure Mr. Atwood's appearance at court and the safety of the community.

Mr. Atwood is a 31-year-old father, fiancé, and self-employed small business owner. He has worked hard, first as an apprentice and later through training and ultimately obtaining his HVAC certificate. Mr. Atwood started his own company, Atwood Home Services, LLC. He is driven by taking care of his growing family – his fiancé, Brittanie Toomey, 5-year-old A.A., 2-year-old, H.A., and a new baby due on June 11, 2024. Mr. Atwood's business focuses primarily on refrigeration, and businesses in Western Pennysvlvania rely upon Mr. Atwood for their cooler repair and maintenance. In recent years, despite enduring a traumatic brain injury because of a car accident in December 2021, Mr. Atwood continues to work as much as possible to provide both emotionally and financially for his family.

1

Mr. Atwood was arrested in his home in Burgettstown, Pennsylvania on April 17, 2024, and charged by complaint with various offenses occurring on January 6, 2021.

The government seeks detention based primarily on its contention that over three years ago, Mr. Atwood allegedly assaulted or attempted to assault police officers with a dangerous weapon. The government must prove by clear and convincing evidence that there is "no condition or combination of conditions [that] will reasonably assure the safety of any other person in the community" before this Court can preventatively detain Mr. Atwood. 18 U.S.C. § 3142(f). Further, "a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *Munchel v. United States*, 991 F.3d 1273, 1283 (D.C. Cir. 2021). Since the government cannot articulate a specific danger to the community beyond the scope of the events that occurred on January 6th, and for reasons discussed below, the government's allegations in this case do not override the other factors in the Bail Reform Act that weigh in favor of release.

**ARGUMENT**

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a person charged should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other

2

person and the community." 18 U.S.C. §§ 3142(b), (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

For these reasons, Congress has required that the government bear the burden of demonstrating, by clear and convincing evidence, that preventative detention is necessary to ensure the safety of the community.

## I.    The government cannot prove by clear and convincing evidence that detention is necessary to assure Mr. Atwood's appearance and the safety of the community.

This Court must consider the following factors when determining whether the government has set forth clear and convincing evidence that Mr. Atwood be detained: 1) the nature and circumstances of the offense charged; 2) the weight of the evidence; 3) the history and characteristics of the person charged; and 4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g). The balance of these factors weighs strongly in favor of release. As such, this Court should release Mr. Atwood with the conditions it deems reasonably appropriate.

## A.   The nature and circumstances of the offense charged do not call for preventative detention

While undoubtedly serious, the circumstances surrounding the alleged offense

date back to 2021. Mr. Atwood has been in his community in Western Pennsylvania for over three years and was identified to law enforcement through an anonymous tip one year ago. In that year, Mr. Atwood has lived at the same location, and has been available and accessible to law enforcement the entire time. Also importantly, since January 6, 2021, there is no evidence that Mr. Atwood glorified the chaos that erupted after President Trump urged his supporters to meet him at the Capitol.[1] Mr. Atwood is not a member of the Proud Boys, Oath Keepers or any other organization involved with planning the Stop the Steal rally or any subsequent action. As the attached letters attest, Mr. Atwood has been employed and law-abiding. *See*, *e.g.*, Exs. A, B. To underscore the lack of danger Mr. Atwood presents, it is important to contextualize the alleged conduct. The following cases are those in which individuals charged were released notwithstanding the government's allegations of threatening and violent conduct:

- *United States v. Michael Foy*, 1:21CR108 (TSC), 2021 WL 2778559 (07/02/21). Mr. Foy was in the same area as Mr. Atwood was alleged to be in— positioned at the entrance of the "tunnel" and is alleged to have thrown a sharpened pole at officers. He is also alleged to have struck officers with a hockey stick. After acknowledging that 18 U.S.C. § 111(b) is not an offense for which there is a presumption for detention under the Bail Reform Act, the Honorable Judge Chutkan released Mr. Foy to home incarceration. ECF. No. 44. A review of the docket shows that defendant Foy has since been compliant with conditions of release and Judge Chutkan has since modified Foy's conditions of release. Mr. Foy's case resolved with a prison sentence, and Mr. Foy has been permitted to self-surrender to a Bureau of Prison facility.

---

[1] Associated Press, *Transcript of Trump's Speech at Rally Before US Capitol Riot*, U.S. News & World Report, Jan. 13, 2021, *available at* https://apnews.com/article/election-2020-joe-biden-donald-trump-capitol-siege-media-e79eb5164613d6718e9f4502eb471f27 (last viewed on April 23, 2024).

- *United States v. Robert Sanford,* 1:21CR52 (PLF) (D.D.C.), Sanford is alleged to have hurled a fire extinguisher into a crowd of police officers and striking at least three officers in the head. Video footage allegedly captures Sanford screaming "traitors" and "cowards" at the officers. *See* ECF. No. 10 (Government's Opposition to Defendant's Motion to Reconsider Detention). Like Mr. Atwood, Sanford was charged with, *inter alia*, assaulting police officers using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b). Yet on March 2, 2021, Judge Friedman granted Sanford's motion for release and placed him on GPS monitoring. ECF. No. 11. A review of the docket shows that Mr. Sanford's case has been resolved.

- *United States v. David Alan Blair,* 1:21CR86 (CRC) (D.D.C.) Blair was captured on body worn camera brandishing a lacrosse stick which served as a pole for a large confederate flag. *See* ECF. No. 1 (Complaint and Statement of Facts). While walking back and forth between the crowd and police officers, Blair is alleged to have exhorted, "hell naw, quit backing up, don't be scared. . .". As an officer advanced, Blair yelled at the officer: "what's up motherfucker, what's up, what's up bitch." *Id.* He then struck the officer in the chest with the lacrosse stick and had to be forcibly restrained by multiple officers *Id.* Notwithstanding this *direct* physical assault with a lacrosse stick, Blair was ordered released conditions. ECF No. 6. Like Mr. Atwood, Blair was charged with, *inter alia*, assaulting police officers using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b). His case has since been resolved, and Mr. Blair is in the community on supervised release.

- *United States v. Federico Klein,* 1:21CR236 (TNM) (D.D.C.), Klein is depicted on body worn camera "wedging [the] shield between the doors to the Capitol at approximately 3:00 p.m. in an apparent effort to prevent the officers from closing the doors." ECF. No. 29, p. 3 (Order granting motion to revoke detention order). Another video showed Klein "pushing the shield into an officer's body in an attempt to break the police line." *Id.* Despite this direct contact, the Court concluded that "Klein does not pose a substantial prospective threat to the community or any other person." *Id.* at 25. Likewise, in Mr. Atwood's case, the government cannot show that he poses a continuing danger to the community, especially now that the events of January 6 have dissipated.

- *United States v. David Judd,* 1:21CR40 (TNM (D.D.C), defendant Judd was alleged to have tossed a lit firework into the inaugural tunnel towards a line of police officers and charged with *inter alia*, 18 U.S.C.§ 111(b). He has since entered into a stipulated trial agreement with the government. The government opposed his pre-trial release. The Honorable Judge Merriweather released defendant Judd over the government's objection. ECF. No. 60. A review of the docket shows that Mr. Judd was been compliant with all conditions of release since May 2021. Mr. Judd's case

resolved with a prison sentence, and Mr. Judd was permitted to self-surrender to a Bureau of Prison facility.

In sum, while the nature of the allegations is serious, an allegation of violence alone is not sufficient to preventatively detain Mr. Atwood, and other similarly situated individuals have been released with conditions and proceeded without incident.

## B. The weight of the evidence does not overcome the presumption of release

Courts have recognized that when federal cases are charged with substantial evidence, that the weight of the evidence is the least important of the 3142 (g) factors, and the bail statute "neither requires nor permits a pretrial determination of guilt." *See United States v. Muntean*, No. 3:22-CR-0035, 2023 WL 122511, at *4 (D.V.I. Jan. 6, 2023) ("Several courts have recognized that "the weight of the evidence is the least important of the various factors"). *See also*, *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991), *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). "Rather, this factor may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985)

## C. Mr. Atwood's history and characteristics weigh in favor of release.

Joshua Atwood is a 31-year-old father, fiancé, HVAC specialist, and small business owner. His priority is raising and providing for his family. See Ex. C. Mr. Atwood and Ms. Toomey are expecting their third child and she has a scheduled c-section date for June 10, 2024 – one of the first things Mr. Atwood reported to undersigned counsel. See Exs. D, E. At work, he also loves nothing more than problem

solving his clients' heating and cooling needs. Mr. Atwood feels lucky that he was able to learn the trade from his mentor, Dave Calderone, who took Mr. Atwood under his wing as an apprentice. Mr. Atwood endured a very challenging childhood, where his most basic needs were not always provided for. He has been committed to growing and nurturing his family differently. When business got slow during the COVID-19 pandemic, Mr. Atwood started his own small business, Atwood Home Services, LLC, with Mr. Calderone's support and assistance. See Ex. F. Joshua Atwood describes the passion that he has for HVAC and refrigeration in particular: "I love my work. It's a puzzle. I get to solve the puzzle, and I get to make people happy by fixing what they need. And I get paid – it's a win-win-win." Mr. Atwood usually gets paid, but he also helps his clients when he knows they cannot always pay him. His fiancé, Ms. Toomey, describes him as someone who does more than serves clients, he is building long-term partnerships. Ex. E. Rebecca Kline, of Cowtastic Frozen Yogurt concurs, calling Mr. Atwood a "god-send" and commending him for getting to know how to operate and fix her very particular machines. Ex. B.

Mr. Atwood is also someone who provides for those in his community and his own family. Mr. Atwood assists his neighbors with work around their homes. For example, he currently has plans to care for his neighbor's horses when he goes out of town. Ex. G. When his mother was struggling, Mr. Atwood brought her from Indiana to Pennsylvania to live with him. He was excited to have his mother in his home for the approaching birth of his first child. However, within just months of her arrival, Angie Atwood's health rapidly deteriorated and she was misdiagnosed with liver failure that was actually cancer. Angie Atwood passed away on December 28, 2018

just two months before A.A. was born in February of 2019. Ex. G.

In December of 2021, Mr. Atwood suffered a major setback. He was in a car accident where another driver rear ended him. At first, it didn't seem to be a terrible accident – he lost consciousness only momentarily. However, Mr. Atwood has struggled with a concussion and traumatic brain injury since. Mr. Atwood has experienced difficulties with concentration for longer period than prior to the accident, vision issues, dizziness, disorientation, and difficulty recalling dates and numbers. Mr. Atwood has undergone substantial medical care since the accident including ocular, physical, cognitive, and motion therapies.

Despite his struggle to recover from the car accident and regular medical care he has been seeking, Mr. Atwood persisted working half days or as much as he can to provide a modest income for him and his family. He is the sole provider for his family, and has a number of jobs and bids pending for Atwood Home Services including a current job with Cowtastic Frozen Yogurt in McMurray, PA. See Ex. B, I. Cowtastic Frozen Yogurt had a planned closing of the shop this week for Mr. Atwood to install new frozen yogurt machines. Ex. I. That project has been put on hold while Mr. Atwood has been detained. Atwood Home Services has an outstanding bid with Coaraopolis Gardens that Mr. Atwood would be busy with should this court release him. Ex. J. Further, Mr. Atwood has been renting a house in Burgettstown while renovating another house just down the road and would like to continue work on it for his family.

Mr. Atwood does have a pending criminal matter in Hancock County, West Virginia. During that case, Mr. Atwood has respected the court's conditions of bond,

attended all court dates, and engaged with the process. The current Hancock County case includes the charges of malicious assault and robbery dating back to an incident on April 28, 2023. As this Court is aware, Mr. Atwood is entitled to the presumption of innocence, and has done what every court hopes someone charged does when arrested – he is communicative with his attorney, confirms court appearances, attends court, and has not had police interaction until this current arrest. Mr. Atwood's state court lawyer describes him as proactive, cooperative, and forthcoming as they pursue trial in his case. *See* Ex. K. While Mr. Atwood was extradited from Pennsylvania to West Virginia, it should be noted that Burgettstown, PA is very close to Hancock County, WV, and that extradition is necessary when an individual is arrested across state lines. It should not be inferred that Mr. Atwood did anything to hide or evade law enforcement – he was living at the same address he was arrested at in this matter. Further, as required by the Court in *Munchel*, the answer to the question of whether someone should be preventively detained "does not turn on any generalized, backward-looking assessment of the rioters or the riot. . . .  Instead, it turns on a specific, forward-looking assessment of whether . . . . individuals currently pose an unmitigable threat to public safety." 991 F.3d. at 1285 (J. Katsas concurring). Here, Mr. Atwood has shown himself to be a person who can be trusted to appear in court and live a law-abiding life while charges are pending. He understands the seriousness of the pending charge in Hancock County, and has walked into a courtroom in another state multiple times to face the charges for nearly a year now. Mr. Atwood will do so in this case as well.

9

**D. Mr. Atwood does not pose a danger to the community and conditions can mitigate any concern.**

To further address any concerns the Court may have, Mr. Atwood has presented his fiancé, Brittanie Toomey as a Third-Party Custodian. Ms. Toomey is a stay-at-home mother, who can both assist Mr. Atwood with any planned travel for court appearance and can monitor his compliance with pretrial release conditions. Ex. E. The U.S. Department of Probation has assessed Mr. Atwood and recommends release with the following conditions, which the Court could also impose the following conditions of release under 18 U.S.C. § 3142(c)(1)(B):

(a) Submit to supervision by U.S. Pretrial Services by phone or in person as directed by the Court.

(b) Restrict travel to the Western District of Pennsylvania, Washington D.C. and the Northern District of West Virginia for court purposes only.

(d) Not possess a firearm, destructive device, or other weapon.

(e) Not use or unlawfully possess a narcotic drug or other controlled substances unless prescribed by a licensed medical practitioner.

Taken together, the proposed conditions combined with Mr. Atwood's proven track record to comply with court orders and obligations are sufficient to reasonably assure the safety of the community and his return to court if he is released. And because such conditions exist, he should be released.

II. **Statistics show that it is extremely rare for federal defendants on bond to flee or recidivate, further confirming that the foregoing release conditions will reasonably assure appearance and safety.**

It is not necessary to detain Mr. Atwood to meet the primary goals of the Bail Reform

Act, which are to reasonably assure appearance in court and community safety. Indeed, AO statistics show that nearly everyone released pending trial in the federal system appears in court and does not reoffend. In fact, in 2022, 99% of released federal defendants nationwide appeared for court as required and 98% were not arrested for new crimes on bond. *See* AO Table H-15 (September 30, 2022) ([available at link](available at link)).

The bond statistics for this district likewise strongly suggest that Mr. Atwood should be released. In this district, released federal defendants appeared for court more than 99% of the time in 2022, and approximately 94% were not rearrested for new crimes on bond. *Id.* Though not a substitute for consideration of Mr. Atwood's individual characteristics, these statistics provide some objective reassurance that detention is not necessary here.

## Conclusion

Joshua Atwood deserves a chance to demonstrate his ability to comply with comprehensive release conditions short of incarceration. At his upcoming detention hearing, he will request that the Court release him on bond, subject to any conditions the Court deems appropriate. The U.S. Department of Probation has recommended release with certain conditions that this court should adopt.

Respectfully submitted:

/s/ *Kathryn Dyer*
Kathryn Dyer
Assistant Federal Public Defender

11